**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BASHEER HARRISON** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| | : | **NO. 14-2114** |
| **v.** | : | |
| | : | |
| **MICHAEL WENEROWICZ,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                    APRIL 16, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Petitioner Basheer Harrison[1] ("Petitioner" or "Harrison"), a Pennsylvania state prisoner, filed a counseled petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254, in which he asserted numerous claims of ineffectiveness of counsel and denial of due process.  [ECF 1].  In accordance with Title 28 U.S.C §636(b) and Local Civil Rule 72.1.IV(c), the petition was referred to United States Magistrate Judge David R. Strawbridge (the "Magistrate Judge") for a *Report and Recommendation* ("R&R").  [ECF 2].  The Magistrate Judge issued an R&R, which recommends that the petition for a writ of *habeas corpus* be denied.  [ECF 13].  After requesting and being granted an extension of time in which to do so, Petitioner filed objections to the R&R.  [ECF 16].  This matter is, therefore, ripe for a *de novo* review and determination of the objections to the R&R.

---

[1]        As noted by the Magistrate Judge in his Report and Recommendation, the state court records did not consistently record Petitioner's name, referring to him as "Bashir Hairston," "Basheer Hairston," or "Basheen Harrison."   It appears these discrepancies were mere transcription errors.  Inasmuch as Petitioner refers to himself as "Basheer Harrison" in these *habeas* proceedings, this Court will do so as well.

After a thorough and independent review of the state court record and court filings, for the reasons stated herein, Petitioner's objections are overruled, the R&R is approved and adopted, and the petition for a writ of *habeas corpus* is denied. As set forth below, however, this Court will issue a certificate of appealability with respect to Petitioner's ineffective assistance of counsel claim premised on trial counsel's failure to object to the trial court's jury instruction on reasonable doubt (Claim IV).

**BACKGROUND**

On May 5, 2006, Petitioner was found guilty by a jury of murder in the third degree of victim Anthony Funny, attempted murder and aggravated assault of another victim, Louis Seabrook, and possessing an instrument of crime and was sentenced on July 17, 2006. *Commonwealth v. Harrison*, No. 3547 EDA 2006, Slip Opinion at *1 (Pa. Super. Ct. Sept. 2, 2008). The facts underlying Petitioner's conviction were summarized by the Pennsylvania Superior Court as follows:

> On December 19, 2014 at approximately 3:35 a.m., Louis [Seabrook], then 14 years old, stood in the doorway of his home and saw [Petitioner] engaged in a struggle with his stepfather, Anthony [Funny]. [Petitioner] had a gun in his hand and Anthony was holding the barrel during the struggle. [Petitioner] fired one shot and Anthony fell to the floor on the porch. [Petitioner] dropped the gun, ran down the steps and within seconds [Petitioner's] brother Kareem Hairston (hereinafter 'Kareem') and another male Reginald Satchell (hereinafter 'Reginald') from the corner of F and Lippincott Streets began firing at the house where Anthony lay on the porch and Louis was standing. Louis stated that Reginald and Kareem fired at least five times and he saw [Petitioner] run to a blue Expedition SUV which was parked on the corner across the street; Kareem and Reginald jumped into the back seat and [Petitioner] sped away down Lippincott Street. (N.T. 4/26/06 500-523; N.T. 4/27/06 545-571).

> Louis memorized the Expedition's license tag number, dragged Anthony in to the house and called the police. (*Id*. at 580-582). Fire rescue arrived and transported Anthony to the hospital where

he died at approximately 4:20 a.m. (N.T. 4/24/06 117-118; N.T. 4/25/06 197-201). The Medical Examiner testified that the bullet entered Anthony's right thigh, penetrated his femoral artery and femoral vein, traveled through his scrotum and exited his left thigh. (N.T. 4/26/06 197-201). Anthony sustained injuries to his vital organs, i.e., his femoral artery and femoral vein, and bled to death. (*Id*.).

When the police arrives, Louis gave a description of the SUV [Petitioner] drove away in with Kareem and Reginald in the back and he told the officer the license plate number. (N.T. 4/24/06 101). This information was broadcasted over police radio and the police stopped [Petitioner] driving the vehicle approximately 25 minutes after the shooting. (N.T. 4/24/06 99-101; N.T. 5/02/06 222-249). Petitioner was taken into custody and $1,716 was taken from him. Two cell phones and two baseball caps were recovered from the SUV. (*See* N.T. 5/02/06 254-263). Louis was transported to where [Petitioner] was stopped and identified him as the man who shot Anthony. (N.T. 4/24/06 112-113; N.T. 4/27/06 584-587).

[Petitioner] was no stranger to Louis, Anthony or Eva Seabrook (hereinafter 'Eva'), Louis' mother; [Petitioner] lived across [the] street approximately two houses from the corner on Lippincott Street. (N.T. 4/24/06 404; N.T. 4/28/06 850-851). Anthony, Louis and Eva resided at 3135 F Street; a couple of houses away from the intersection of Lippincott and F Streets. (*Id*. at 402; N.T. 4/28/06 829). Eva further testified that on the afternoon of December 17, 2004, she saw [Petitioner] standing on the corner of F and Lippincott Streets and she observed the butt of a gun in his waistband. The gun in [Petitioner's] waistband appeared similar to the gun that [Petitioner] dropped on the porch. (N.T. 4/28/06 842-852).

The night before the shooting, December 18, 2004, Louis went to visit his aunt, who lived in the area, and sat on her porch with his friend Milton Brown (hereinafter 'Milton') before going into the house. [Milton left when Louis entered his aunt's house.]. After about ten minutes Milton [returned] and Louis saw that his face was red and scratched up, like he had been in a fight. (N.T. 4/26/06 426-427). Milton and Louis went to Louis' house and spoke to Anthony. After speaking to the boys, Anthony said he would speak to [Petitioner]. (*Id*. at 490-493). Before leaving for work at 10:00 p.m., Eva asked Anthony to stay home and not to say anything to [Petitioner]. (N.T. 4/28/06 853-854).

Louis testified that Anthony left home that night and said he was going to Clementine Street. (N.T. 4/26/06 491-494). Louis stated that Anthony was unarmed and Eva testified that Anthony did not own a gun. (N.T. 4/26/06 495; N.T. 4/28/06 868-869). Sometime, after Anthony left, Louis heard gunshots that sounded like they were coming from the direction of E Street. (N.T. 4/28/06 733-744, 748-749). Approximately 10 minutes later, Louis heard a noise on the porch. He went to the door and saw [Petitioner] and Anthony engaged in a struggle and [Petitioner] fired the shot that ultimately resulted in Anthony's death. (N.T. 4/28/06 743).

After the shooting, the police recovered a .38 revolver containing five spent cartridge casings from the porch, twelve spent .9 mm cartridges from near the corner of F and Lippincott Streets, and seven more spent .9 mm casings further down Lippincott Street. The firearms expert testified that the .9 mm cartridge cas[ing]s found at the corner were ejected from two different pistols. The cartridge cas[ing]s found further down Lippincott Street were ejected from one of the guns that were [sic] fired from the corner. A total of five bullet fragments and specimens were recovered from cars parked out in front of 3135 F Street, the porch of 3133 F Street, and from the living room wall of 3139 F Street. The placement of the ejected cartridges on the corner, bullet fragments, and bullet specimens at the scene indicated that Reginald and Kareem shot at Louis and Anthony from the direction of the corner of F and Lippincott Streets. (N.T. 5/01/06 8-145; Exhibit C-8).

*Commonwealth v. Harrison*, No. 3547 EDA 2006, Slip Opinion at *1-4 (Pa. Super. Ct. Sept. 2, 2008).

The procedural history of this matter is set forth in the R&R, and need not be repeated in detail, but will be summarized to the extent relevant to the analysis of Petitioner's objections. As noted in the R&R, on May 5, 2006, the jury returned its verdict, finding Petitioner guilty of murder in the third degree of Anthony Funny, the attempted murder and aggravated assault of Louis Seabrook, and possessing an instrument of crime. On July 17, 2006, Petitioner was sentenced to a term of imprisonment of 20 to 40 years for third degree murder, a consecutive term of 7½ to 15 years for attempted murder (which was merged with the aggravated assault conviction for sentencing purposes), and a further consecutive term of 1½ to 5 years for

possessing an instrument of crime. Petitioner's post-sentence motion was denied on November 20, 2006.

Petitioner filed a direct appeal to the Pennsylvania Superior Court on December 19, 2006, in which he raised six issues for review: (1) whether the trial court erred in instructing the jury on accomplice liability; (2) whether the evidence was insufficient to sustain convictions for aggravated assault and attempted murder; (3) whether the evidence was insufficient to support conviction for murder of the third degree; (4) whether the trial court erred in denying Petitioner's motion for a mistrial based upon inadmissible testimony that Petitioner was a drug dealer and the "boss;" (5) whether the trial court erred in overruling an objection to testimony that Petitioner possessed a large amount of currency when he was arrested; and (6) whether the evidence was insufficient to support Petitioner's conviction for possessing an instrument of crime. On September 2, 2008, the Superior Court affirmed the judgment of conviction. Petitioner filed a *pro se* petition for allowance of appeal in the Pennsylvania Supreme Court on October 1, 2008, which was "voided" on November 3, 2008.

On August 20, 2009, Petitioner filed a *pro se* PCRA petition, which was amended by retained counsel on March 25, 2010, and again on October 29, 2010. The amended, counseled petition asserted two claims, both of which concerned the jury instructions for the fatal shooting of Anthony Funny, *to wit*: (1) trial counsel was ineffective for failing to request a jury instruction regarding "the circumstances under which an inference could be drawn from a gunshot wound to a non-vital area of the body," and (2) trial counsel was ineffective for failing to request a jury instruction for involuntary manslaughter. The PCRA court dismissed the amended petition without a hearing. The Superior Court affirmed the dismissal on May 15, 2013. The Pennsylvania Supreme Court denied allowance of appeal on March 5, 2014.

Represented by new counsel, Petitioner filed the underlying *habeas* petition on April 10, 2014. In the *habeas* petition, Petitioner challenges the judgment of sentence on the grounds of ineffective assistance of trial counsel for failing to object to alleged prosecutorial misconduct, failing to request or to oppose particular jury instructions, and failing to seek the dismissal of the attempted murder charge in light of other legal rulings made in the case. The petition was referred to the Magistrate Judge for the preparation of an R&R, which was issued on August 8, 2017. As noted, the Magistrate Judge recommended the denial of all of Petitioner's *habeas* claims. Petitioner has now filed the underlying, counseled objections to the R&R.

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. §636(b)(1). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. §2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id*. at 196. Thus, in accordance with §2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

In order to seek federal *habeas* relief, however, a petitioner must first exhaust the remedies available in state court. *See* 28 U.S.C. §2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . ."). To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In order for a claim to be exhausted, "'[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman*, 167 F. App'x 320, 322-23 (3d Cir. 2006) (quoting *Evans v. Court of Common Pleas, De. County, Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992)). A state prisoner must "fairly present" his federal claims to the state courts before seeking federal *habeas* relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004). The *habeas* petitioner bears the burden of proving exhaustion of all state remedies. *Boyd v. Waymart*, 579 F.3d 330, 367 (3d Cir. 2009).

If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

To show "cause," the petitioner "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.*; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of suitable "cause" include a showing that: (1) the factual or legal basis for a claim was not reasonably available; (2) some interference by state officials made compliance with the state procedural rule impracticable; or (3) the procedural default was the result of ineffective assistance of counsel. *Id.* at 488. To demonstrate "prejudice," a petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Coleman*, 501 U.S. 722, the United States Supreme Court held that ineffective assistance of state post-conviction counsel cannot satisfy the "cause" requisite for overcoming a procedural default because there is no federal constitutional right to counsel on post-conviction review. *Id.* at 750-54. In *Martinez v. Ryan*, 566 U.S. 1 (2012), however, the Supreme Court carved out a "narrow" and "limited" exception to the rule in *Coleman*, and held that where state

law requires claims of ineffective assistance of trial counsel to be raised for the first time in a collateral proceeding, a federal *habeas* petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of trial counsel's ineffectiveness if the collateral appeal counsel was also ineffective. *Martinez*, 566 U.S. at 7-19.

In *Martinez*, the Supreme Court held that counsel's failure on collateral review to raise a claim of ineffective assistance of trial counsel may constitute "cause" to excuse a procedural default of the trial counsel ineffectiveness claim if: (1) collateral review counsel's failure itself met the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984); and (2) the underlying ineffective assistance of trial counsel claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Noting that the *Martinez* Court compared this standard to that required to issue certificates of appealability, the United States Court of Appeals for the Third Circuit interpreted the requisite inquiry as a "threshold inquiry" that "'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) (quoting *Miller El v. Cockerell*, 537 U.S. 322, 327, 336 (2003)).

As noted, each of Petitioner's *habeas* claims is premised upon the alleged ineffective assistance of counsel. When addressing the substantive merits of an ineffective assistance of counsel claims on *habeas* review, this Court must apply the two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id*. at 687. To satisfy the first prong, a petitioner must show that "counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992). To meet this second prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

**DISCUSSION**

Petitioner's objections to the Magistrate Judge's R&R are directed to each of his four *habeas* claims. At the outset, this Court notes that the Magistrate Judge issued a thorough, sixty-two page R&R that addressed each of Petitioner's claims. In the well-reasoned report, the

Magistrate Judge found that these claims were either procedurally defaulted or lacked merit. For the most part, Petitioner's objections to these findings largely reiterate the same arguments he presented to, and which were thoroughly considered and rejected by, the Magistrate Judge. Regardless, this Court addresses each objection below.

***Objection One[2] (pp. 32-35) – Claim One – Misapplication of Supreme Court Precedents***

At claim one of the *habeas* petition, Petitioner contends that his trial counsel was ineffective for not objecting to or meaningfully addressing several instances of alleged prosecutorial misconduct. In recommending the denial of this claim, the Magistrate Judge found that the claim was procedurally defaulted and that Petitioner had failed to meet the *Martinez* standard for excusing the default or to show the requisite cause and prejudice under *Strickland* to excuse the default. Petitioner objects to the Magistrate Judge's conclusions on several bases.

Petitioner's first objection is that the Magistrate Judge misapplied two Supreme Court precedents in his R&R: *Darden v. Wainwright*, 477 U.S. 168 (1986), and *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). Specifically, Petitioner argues that the Magistrate Judge misapplied these two decisions to support his conclusion that the prosecutor's actions did not infect Petitioner's trial with a level of unfairness that violated due process. In his objection, Petitioner contends that these two cases are distinguishable from his case in that the prosecutorial misconduct in those two cases occurred only during the closing arguments and not throughout the trial as alleged by Petitioner here and because the trial judges in these two cases gave curative instructions following the misconduct, unlike the trial judge in this case. Petitioner's argument is misplaced.

---

[2]     For ease of reference, this memorandum opinion refers to Petitioner's objections in the order in which they appear in his objections.

In his R&R, the Magistrate Judge cited to *Darden* and *Donnelly* simply for the legal standard to be applied to claims of prosecutorial misconduct. As correctly acknowledged by Petitioner in his objections, "it is understandable that the Magistrate would have cited these United States Supreme Court decisions – AEDPA requires that Petitioner show that the state court decisions were contrary to, or an unreasonable application of such precedent . . . ." Seemingly lost on Petitioner, however, the Magistrate Judge did not rely upon or cite to these two cases or their facts as comparators to the alleged conduct herein, but merely as the Supreme Court precedents which provide the legal standards against which Petitioner's claims must be measured. As such, Petitioner's objection that the Magistrate Judge misapplied these two decisions is without merit.

***Objection Two (pp. 35-36) – Claim One –Erroneous Failure to Find a Pattern of Prosecutorial Misconduct***

Petitioner next argues that the Magistrate Judge erroneously failed to find a pattern of prosecutorial misconduct. Specifically, Petitioner argues that the Magistrate Judge erroneously based his conclusion on his finding that the instances on which Petitioner relies "share[d] no common theme . . ." (Petitioner's Objections at p. 12). Relying on *Moore v. Morton*, 255 F.3d 95 (3d Cir. 2001), Petitioner argues that one need not show a common theme to establish a pattern of misconduct and that "when misconduct appears in several unrelated areas, the risk of prejudice and a denial of due process is heightened." (Petitioner's Objections at p. 36).

Under Supreme Court precedent, in determining whether a defendant has been deprived of a fair trial due to prosecutorial misconduct, the reviewing court must "weigh the prosecutor's conduct, the effect of the curative instructions, and the strength of the evidence." *Moore*, 255 F.3d at 107 (citing *Darden*, 477 U.S. at 182, and *Donnelly*, 416 U.S. at 643). Here, in reaching his conclusion and recommendation, the Magistrate Judge clearly applied this standard. In the

R&R, the Magistrate Judge described each of Petitioner's alleged instances of prosecutorial misconduct, and considered them "collectively." (*See* R&R at 31). Petitioner's objection and argument to the contrary is without merit and is overruled.

***Objection Three (pp. 36-38) – Claim One – Improper Focus on the Things Counsel Did Properly***

Petitioner next objects to the Magistrate Judge's reliance on trial counsel's "alert and active" participation in the trial as a basis to reject Petitioner's ineffective assistance of counsel claims. In support of this objection, Petitioner points to two examples, neither of which suggests an improper focus by the Magistrate Judge. First, Petitioner points to the Magistrate Judge's conclusion that the prosecutor's purported improper description of the required elements of the crimes and burden of proof "would likely have little resonance with jurors," and that "the lengthy instruction on reasonable doubt that counsel knew would be forthcoming from the court would have ameliorated any concern about a misunderstanding . . . ." (Petitioner's Objections at 37). Petitioner ignores, however, that the Magistrate Judge's conclusion was also premised on the fact that the trial court advised the jury that it was the duty of the court, not the parties, to instruct the jury on the law, which the court did. In doing so, the Magistrate Judge properly took into consideration the prosecutor's conduct and the effect of the curative instructions. *See Moore*, 255 F.3d at 107.

Next, Petitioner points to the prosecutor's eliciting of deceptive testimony about whether Petitioner was wearing a leg brace on the night of the shooting. Specifically, Petitioner argues that the prosecution engaged in misconduct, to which trial counsel failed to object, by soliciting testimony from witnesses who did not observe Petitioner wearing a leg brace when another Commonwealth witness confirmed that Petitioner was wearing a brace at the time of his arrest. As the Magistrate Judge pointed out, however, defense counsel was able to effectively refute the

prosecution's perceived misleading questions of other witnesses about Petitioner's wearing of a leg brace through the testimony of Petitioner's treating physical therapist. In light of this effective response by trial counsel, the Magistrate Judge correctly concluded that there was no substantial claim of trial counsel ineffectiveness sufficient to excuse the procedural default of this claim. Accordingly, this objection is overruled.

**Objection Four (pp. 38-41) – Claim One – Failure to Address Individual Claim of Prosecutorial Misconduct**

Petitioner next objects to the Magistrate Judge's purported failure to address, as an independent *habeas* claim, Petitioner's contention that trial counsel was ineffective for failing to object to the prosecution's improper solicitation of inadmissible testimony that two individuals, Louis Seabrook and Milton Brown, sold drugs for Petitioner. Petitioner's objection in this regard is without merit. As noted by the Magistrate Judge, Petitioner's trial counsel did object to the introduction of this evidence and moved for a mistrial. Though the trial court denied counsel's request for a mistrial, the court sustained the objection, gave the jury a curative instruction, and struck the evidence. The trial court charged the jury as follows:

> Ladies and gentlemen, at this time, I instruct you to disregard all of this witness' [Seabrook's] testimony concerning selling drugs for the defendant, Basheer, to strike that testimony, as well as any of his testimony concerning Basheer being the boss.
>
> This witness' testimony is not based on firsthand knowledge and is therefore inadmissible. You are to strike it and disregard it. It is to have no place at all in your considerations. I order it stricken from the record.

(N.T. 4/26/06 at 423-24). As the Magistrate Judge properly concluded, under these circumstances, Petitioner's bald claim that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct is belied by the record. Accordingly, Petitioner's objection is overruled.

***Objection Five (pp. 41-43) – Claim Two – Magistrate Judge's Application of Improper Standard to Petitioner's Claim Regarding Trial Counsel's Failure to Seek Particular Jury Instructions***

At claim two of the *habeas* petition, Petitioner alleges that his trial counsel was ineffective for failing to seek jury instructions to mitigate part of the jury instruction regarding the "vital part" inference of malice for a murder conviction, and for failing to request that the jury be instructed on involuntary manslaughter as an alternative to third-degree murder. Petitioner objects to the Magistrate Judge's conclusion on these claims on the basis that the Magistrate Judge applied the wrong standard. Petitioner's objection is without merit. Because each of these particular ineffective assistance of counsel claims was presented to and rejected by the state court on PCRA review, the Magistrate Judge properly and correctly applied AEDPA's heightened and deferential standard of review, concluding that the state court had not unreasonably applied clearly established federal law or reached a decision based on an unreasonable determination of the facts. (*See* R&R at pp. 38-43). As such, this Court finds that the Magistrate Judge applied the correct standard, and Petitioner's objection is overruled.

***Objection Six (pp. 43-45) – Claim Two – Erroneous Finding as to Trial Counsel's Failure to Request an Involuntary Manslaughter Instruction***

As noted, at claim two of the *habeas* petition, Petitioner alleges that his trial counsel was ineffective for failing to request an involuntary manslaughter instruction, a lesser included offense of the third-degree murder charge he faced. Again, because this claim was presented to the state courts on appeal and exhausted, the Magistrate Judge properly applied AEDPA's heightened and deferential standard when addressing it. In his objection, Petitioner disagrees with the Magistrate Judge's suggested analysis of this claim. This Court agrees with the Magistrate Judge and finds that there is no basis to conclude that the state court's rejection of this

ineffective assistance of counsel claim amounted to an unreasonable application of the *Strickland* standard.

When addressing the merits of an ineffective assistance of counsel claims on *habeas* review, the "clearly established federal law" applicable to such claims is the familiar two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id*. at 687. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*.; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

In addressing Petitioner's specific claim of ineffective assistance of counsel, the Superior Court (affirming the opinion of the PCRA court) applied the governing test for ineffective assistance of counsel claims announced in *Commonwealth v. Pierce,* 527 A.2d 973 (Pa. 1987), and applied in *Commonwealth v. Dennis*, 950 A.2d 945, 954 (Pa. 2008). *See Commonwealth v. Harrison*, Slip Opinion at *3-4 (Pa. Super. Ct. May 15, 2013). The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to established federal law and is "not contrary to the *Strickland* test." *Rompilla v. Horn*, 355 F.3d 233, 250 (3d Cir. 2004); *Henderson v. DiGugliemo*, 138 F. App'x 463, 468 (3d Cir. 2005); *Werts*, 228 F.3d at 203

(recognizing that the *Pierce* test as materially identical to the *Strickland* test). Therefore, the Superior Court's decision as to this ineffective assistance of counsel claim is not "contrary to" the test established in *Strickland*.

The dispositive question with respect to this ineffective assistance of counsel claim, therefore, becomes whether the Superior Court's decision reflects an unreasonable application of the *Strickland* test. To carry his burden, Petitioner must demonstrate that the state court's decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under [*Strickland*]." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000).

In addressing Petitioner's claim that trial counsel was ineffective for failing to request an involuntary manslaughter instruction, the Superior Court found that counsel's failure to request a manslaughter instruction aligned with a trial strategy and argument that Petitioner was not present at the time of the shooting. Specifically, the Superior Court found:

> Harrison also claims that the evidence at trial supported a conviction for involuntary manslaughter and that trial counsel was ineffective for not requesting an involuntary manslaughter charge. This claim also fails. "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa. C. S. §2504(a). "[I]n a murder prosecution, an involuntary manslaughter charge shall be given only when requested, and where the offense has been made an issue in the case and the trial evidence reasonably would support such a verdict." *Commonwealth v. White*, 415 A.2d 399, 402 (Pa. 1980). Additionally, "whether or not to request jury instructions on involuntary manslaughter is a matter of trial strategy." *Commonwealth v. Morris*, 424 A.2d 1336, 1338 (Pa. 1981). While pursuing involuntary manslaughter as a defense against murder may have been reasonable, counsel argued at trial that Harrison was not present at the time of the shooting, and thus the jury must acquit him. Trial Court Opinion, 7/12/2012, at 7-8. As such, not requesting a manslaughter instruction was consistent with the defense theory that Harrison was innocent of any wrongdoing, and trial counsel's omission had a "reasonable basis designed to serve

his client's interests." *Dennis*, 950 A.2d at 954. Accordingly, counsel cannot be found to have been ineffective.

*Commonwealth v. Harrison*, Slip Opinion at *5-6 (Pa. Super. Ct. May 5, 2013).

As set forth in the R&R, in rejecting this claim the Pennsylvania Superior Court reasonably determined whether trial counsel's decision to forego an involuntary manslaughter instruction was consistent with counsel's reasonable trial strategy, as required under the *Strickland* analysis. In light of trial counsel's consistent and reasonable strategy of contesting Petitioner's presence at the shooting, there is no basis to conclude that counsel's failure to request an involuntary manslaughter instruction was unsound. As such, Petitioner has not shown that the state court's adjudication of this claim was an unreasonable application of *Strickland*. Therefore, this claim is denied.

### Objection Seven (pp. 46-48) – Claim Three -- Magistrate Judge's Erroneous Finding as to Trial Counsel's Failure to Explore Inconsistent Rulings by Trial Judge

At claim three of the *habeas* petition, Petitioner contends that his trial counsel was ineffective for failing to adequately argue for the dismissal of the attempted murder charges as to Louis Seabrook after the court dismissed the charge of first-degree murder as to Anthony Funny. The Magistrate Judge found (and Petitioner does not challenge) that this claim was procedurally defaulted because it was not presented to the state courts. Petitioner argues, however, that he can overcome his procedural default under the exception provided by *Martinez*. The Magistrate Judge correctly disagreed.

As set forth above, under *Martinez*, Petitioner must show that the underlying claim of trial counsel's ineffectiveness is a "substantial one," meaning that the underlying claim "has some merit." *Martinez*, 566 U.S. at 14. In addition, Petitioner must establish that his PCRA counsel's conduct was such that no competent attorney would have followed it, *Strickland*, 466

U.S. at 687, and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

As the Magistrate Judge correctly concluded, Petitioner has not met the *Martinez* standard. First, Petitioner's trial counsel did, *in fact*, move for judgment of acquittal on the attempted murder charge by arguing the lack of evidence as to Petitioner's specific intent. During oral argument, trial counsel argued as follows:

> I would argue there is nothing to reflect that Mr. Basheer Hairston, first of all, had any ill will towards Louis Seabrook. There's nothing to show that, whatsoever, that he had ill will towards him. That he pointed a weapon towards him. That he threatened him in any form or fashion. And that it was only after Basheer Hairston left the porch, that shots were fired from two other individuals up towards the porch at a point when Mr. Seabrook was apparently coming out of the doorway.
>
> I would argue to the court that there is nothing to reflect that Basheer Hairston attempted to murder Mr. Seabrook via either his own conduct. Because there is no conduct on his part towards Mr. Louis Seabrook; none, whatsoever. And via the theory that this is a conspiracy that existed to murder Mr. Seabrook. There is no indication of a specific intent to kill him. There's no evidence of gunfire in the doorway area. There is no evidence of a shared intent by Mr. Hairston for the other two guys to shoot and kill Louis Seabrook.
>
> So, therefore, your Honor, I would argue that you don't have a criminal conspiracy to attempt to shoot and kill Louis Seabrook. I have the same argument with respect to the aggravated assault. This defendant made no attempt to cause serious bodily injury to Louis Seabrook. [He] [s]aid or did nothing with respect to the other two individuals with respect to Mr. Louis Seabrook.

(N.T. 5/2/06 at 326-27). Though the trial judge ultimately denied trial counsel's motion for acquittal of the attempted murder charge, for purposes of evaluating Petitioner's current ineffective assistance of counsel claim, the fact that trial counsel made the very argument with respect to specific intent that Petitioner now contends trial counsel should have argued again is

significant. Indeed, trial counsel's argument as to the lack of specific intent, which was directed at both the attempted murder charge and the conspiracy charge with respect to Mr. Seabrook, and the first-degree murder and conspiracy charges with respect to Mr. Funny, was successful with respect to three of the four charges challenged. In light of these facts, the Magistrate Judge's conclusion that Petitioner has not met his burden under *Martinez* to overcome the procedural default of this claim is correct.

In addition, most of the argument contained in Petitioner's *habeas* filings with respect to this ineffective assistance claim is directed at the trial court's purported misunderstanding of the law of accomplice liability. (*See* Pet'r Mem. at 73-81). Counsel, however, cannot be deemed ineffective for unsuccessfully alleviating a judge's purported misunderstanding of the law. This is particularly true here where, as described above, trial counsel did, in fact, seek dismissal of the attempted murder charge with respect to Louis Seabrook by challenging the lack of evidence as to Petitioner's specific intent and was successful in obtaining dismissal of three of the four charges challenged on this ground.

Moreover, on direct appeal, the Superior Court found that the evidence presented at trial (the same evidence on which the trial judge relied to deny Petitioner's motion to dismiss the attempted murder charge) was sufficient to support Petitioner's conviction for the attempted murder of Louis Seabrook. Specifically, the Superior Court found as follows:

> While we agree with appellant that the factual evidence does not support a finding that he shot at Louis, we find that the evidence was sufficient to support a conviction of aggravated assault and attempted murder under a theory of accomplice liability. The evidence at trial established that Louis observed, from the doorway of his home, [Petitioner] and Anthony on the porch struggling over a gun. Louis observed [Petitioner] shoot his step-father and flee from the scene towards his waiting car and two companions, Kareem and Reginald. Once [Petitioner] had crossed the street and reached his companions, Kareem and Reginald opened fire on

> Louis. [Petitioner] then got into the driver's seat of the car while
> Kareem and Reginald entered the car as passengers. The three
> men left the scene of the crime together. Bullet fragments were
> recovered from the cars parked outside Louis and Anthony's home,
> the porch of 3133 F Street, and the living room wall of 3139 F
> Street. Contrary to [Petitioner's] assertion, the foregoing evidence
> does not merely establish his presence at the scene of the crime. It
> is clear that [Petitioner] was an active participant in the events
> which transpired. Thus, we find the evidence sufficient to convict
> appellant of aggravated assault and attempted murder.

*Commonwealth v. Harrison*, Slip Opinion, at *8-9 (Pa. Super. Ct. Sept. 2, 2008). In light of this finding by the Superior Court as to the sufficiency of the evidence of specific intent (a finding not directly challenged here), Petitioner cannot meet the requisites of either *Martinez* or *Strickland*. Thus, his objection is overruled.

### Objection Eight (pp. 49-51) – Claim Four – Magistrate Judge's Resolution of Claim that Counsel Ineffectively Failed to Object to the Erroneous Reasonable Doubt Instruction

At claim four of the *habeas* petition, Petitioner asserts that his trial counsel was ineffective for failing to object to the trial court's erroneous jury instruction on reasonable doubt, which Petitioner contends was constitutionally inadequate. The Magistrate Judge found (and Petitioner does not challenge) that this claim was procedurally defaulted because it was not presented to the state courts. Again, Petitioner argues that he can overcome his procedural default of this claim under the exception provided by *Martinez*. The Magistrate Judge disagreed.

In addressing this claim, the Magistrate Judge first assessed the viability of the underlying claim that the trial court gave an erroneous jury instruction as to reasonable doubt. Petitioner argues that the reasonable doubt jury instruction provided was constitutionally defective because it effectively lowered the burden of proof that the prosecution had to meet. The jury instruction given was as follows:

> Let me speak to you about reasonable doubt. Although the
> Commonwealth has the burden of proving that a defendant is

guilty, this does not mean that the Commonwealth must prove its case beyond all doubt or to a mathematical certainty. Nor must it demonstrate the complete impossibility of innocence. A reasonable doubt is a doubt that would cause a reasonable careful and sensible person **to pause, to hesitate, to refrain from acting** upon a matter of highest importance in his or her own affairs or to his or her own interests. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of a crime charged.

A reasonable doubt must be a real doubt. It may not be an imagined one nor may it be a doubt that's manufactured to avoid carrying out an unpleasant duty. So to summarize, you may not find the defendant guilty based upon a mere suspicion of guilt. The Commonwealth has the burden of proving the defendant guilty beyond a reasonable doubt. If the Commonwealth has met that burden, then the defendant is no longer presumed to be innocent and you should find him guilty. On the other hand, if the Commonwealth has not met its burden, then you must find him not guilty.

(N.T. 5/4/06 at 623) (emphasis added). Petitioner objects to this instruction on the basis that it "failed to present the three standards – pause, hesitate, refrain [from acting] – in the alternative," such that "jurors could believe that a reasonable doubt requires all three, i.e., not just a doubt causing them to pause but also one that would cause them to completely refrain from acting." (Pet'r Mem. at 82). Put differently, Petitioner contends that this instruction is constitutionally defective in that it posits three standards without listing them in the disjunctive with the use of the word "or".

The Fourteenth Amendment Due Process Clause protects an "accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). Although trial courts must instruct the jury "on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska,* 511 U.S. 1, 5 (1994). "Rather,

'taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.'" *Id.* (quoting *Holland v. United States,* 348 U.S. 121, 140 (1954)); *see also United States v. Issac*, 134 F.3d 199, 203 (3d Cir. 1998) ("Due process is satisfied if the instructions, taken as a whole, accurately convey the concept of reasonable doubt to the jury.").

Accordingly, an instruction to a jury should not be "judged in artificial isolation, but must be viewed in the context of the overall charge." *Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974); *see also United States v. Covle*, 63 F.3d 1239, 1245 (3d Cir. 1995). The proper task on review is to determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution," *Estelle v. McGuire,* 502 U.S. 62, 72 (1991), or, stated otherwise, "whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet" the reasonable doubt standard." *Victor*, 511 U.S. at 6; *see also Thomas v. Horn,* 570 F.3d 105, 117 (3d Cir. 2009).

As noted, Petitioner contends that the trial court's jury instruction on reasonable doubt was constitutionally defective because it included a series of three definitions of reasonable doubt, *i.e.*, to pause, hesitate, refrain from acting, without separation with the requisite disjunctive "or". The United States Supreme Court has "repeatedly approved" the formulation of defining reasonable doubt as a doubt which would cause a reasonable person to "hesitate" to act; finding that this definition "gives a common sense benchmark for just how substantial a doubt must be." *Victor,* 511 U.S. at 2. The United States Supreme Court, however, has never addressed the formulation of reasonable doubt used here. As the United States Court of Appeals for the Third Circuit has noted, however, "[t]he Pennsylvania Supreme Court has a long history of approving and recommending the 'restrain from acting' formulation," a formulation similar to that used by the trial court and at issue here. *Thomas,* 570 F.3d at 118 (citing, *inter alia,*

*Commonwealth v. Marshall,* 810 A.2d 1211, 1225 (Pa. 2002), *Commonwealth v. Young,* 317 A.2d 258, 261–62 (Pa. 1974) and *Commonwealth v. Donough,* 103 A.2d 694, 697 (Pa. 1954)); *see also Commonwealth v. Uderra*, 862 A.2d 74, 92 (Pa. 2004) (sanctioning the use of the vary three formulations of reasonable doubt used in this case).

In *Thomas,* the Third Circuit addressed the constitutionality of a "restrain from acting" formulation of reasonable doubt that was used ***instead of*** the Supreme Court sanctioned "hesitate to act" formulation. 570 F.3d 105 (3d Cir. 2009). In comparing the words "hesitate" to "restrain," the Third Circuit noted that "'[h]esitate' implies a temporary interruption before acting," while "'[r]estrain' suggests a more prolonged, if not permanent, period of inaction." *Id.* at 118. Recognizing this difference, the Third Circuit found that "defining reasonable doubt as such a doubt that would 'restrain' one's actions decreases, to some extent, the burden of proof that the prosecution would have to meet were the 'hesitate to act' formulation employed instead." *Id.* at 118. Notwithstanding the apparent lowering of the prosecution's burden of proof, the Third Circuit determined that "use of the word 'restrain,' though perhaps not ideal," was not enough to render the instruction unconstitutional. *Id.* at 119–20.

Numerous cases in this District have similarly addressed whether the use of the phrase "restrain from acting" to the "hesitate" language lowered the prosecution's burden and found no constitutional error. For example, in *Porter v. Horn,* 276 F. Supp.2d 278 (E.D. Pa. 2003), a *habeas* petitioner argued that the use of the phrase "restrain from acting" rather than "hesitate" raised the quantum of doubt necessary for the jury to find reasonable doubt and, hence, violated due process. *Id.* at 340. The federal court determined that "the trial court's substitution of the word 'restrain' for 'hesitate' did not impermissibly raise the level of doubt so as to constitute constitutional error[,] [since] [t]aken as a whole, the reasonable doubt jury instruction adequately

instructed the jurors on the definition of reasonable doubt and its role in criminal convictions." *Id.* at 341. Indeed, it deemed the petitioner's argument merely linguistic in light of the totality of the instruction which emphasized "the importance of reasonableness and focusing on the significant role played by evidence." *Id.* at 340. Likewise, in *Starkes v. Marks,* 524 F. Supp. 37, 40 (E.D.Pa. 1981), the court, in addressing a similar argument, held that "[a]lthough there may be a semantic difference between the terms 'restrain' and 'hesitate' when viewed in isolation, it cannot be said, however, that there is a substantial difference between these two charges when each term is viewed in the context of the overall charge." *Id.* at 40; *see also Laird v. Horn,* 159 F. Supp.2d 58, 92 (E.D.Pa. 2001) (holding that trial court's use of word "restrain" as opposed to "hesitate" in reasonable doubt instruction did not impermissibly lower government's burden of proof); *Peterkin v. Horn,* 176 F. Supp.2d 342, 381 (E.D.Pa. 2001) ("Although we would agree with Petitioner that the word 'restrain' implies a slightly higher level of doubt than does the word 'hesitate,' we do not find that the trial court's use of the word 'restrain' in its reasonable doubt instruction operated to raise the level of doubt so high as to constitute constitutional error. Rather, our review of the instruction as a whole reveals that the trial court adequately defined the meaning and outlined the proper implementation of the concept of reasonable doubt to the jury."); *Brown v. Folino,* 2004 WL 1211946, at *4 (E.D.Pa. May 28, 2004) (holding that a jury charge stating that "a hesitation concerning the guilt of the defendant may become a reasonable doubt when and if that hesitation becomes a restraint," was constitutional under the standards established by the Supreme Court in *Victor* ), *aff'd*, 179 F. App'x 845 (3d Cir. May 2006).

Like the Third Circuit's analysis of the word "restrain" in *Thomas*, this Court finds that the word "refrain," as used in the underlying instruction, suggests a more "prolonged, if not

permanent, period of inaction," than does the word "hesitate." *Thomas*, 570 F.3d at 118. Common dictionary definitions of "refrain" include:

- "to keep oneself from doing, feeling, or indulging in something especially from following a passing impulse." *Merriam-Webster Dictionary*;

- "to stop oneself from doing something." *Oxford Dictionary*; and,

- "to not let yourself do something." *Cambridge Dictionary*.

As such, defining reasonable doubt as a doubt that would cause a reasonably careful person "to refrain from acting," would appear to "decrease[], to some extent, the burden of proof that the prosecution would have to meet" were the "hesitate to act" formulation utilized alone or in the disjunctive context here. *Thomas*, 570 F.3d at 118.

Nonetheless, in light of the Third Circuit's conclusion in *Thomas* with respect to the constitutionality of the use of the similar phrase "restrain from acting," this Court cannot conclude that the trial court's use of the similar phrase "refrain from acting" in the absence of the disjunctive "or," was unconstitutional. Though the Third Circuit has posited that there may be a difference in the degree of doubt suggested by "restrain from acting" versus "hesitate to act," it recognized that there was no *constitutional* significance to the difference. *See Thomas,* 570 F.3d at 119 (holding that "restrain from acting" language does not render a reasonable doubt instruction unconstitutional because it does not "'suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.'") (quoting *Cage v. Louisiana,* 498 U.S. 39, 41 (1990)); *see also Brown v. Folino,* 179 F. App'x 845, 848 & n.3 (3rd Cir. 2006) (non-precedential decision "not[ing] [the panel's] suspicion" that the degree of doubt suggested by "restrain from acting" might be akin to language that the Supreme Court found problematic in *Cage v. Louisiana,* 498 U.S. 39 (1990), but recognizing that "no Supreme Court decision has

struck down any version of the 'restraint' formulation of reasonable doubt."). Reviewing the instruction at issue here as a whole, this Court finds that there is a reasonable likelihood that the jury understood the instruction to only allow a conviction based on proof sufficient to meet the beyond a reasonable doubt standard. The instruction adequately informed the jurors regarding the concept of reasonable doubt. Such language allowed the jury to maintain reasonable doubt under any of the three definitions listed, thereby not raising the degree of doubt for acquittal to a level higher than what is required under the constitutional reasonable doubt standard. Accordingly, in light of *Thomas,* the trial court's reasonable doubt instruction in Petitioner's case was not constitutionally deficient and Petitioner, therefore, is not entitled to relief on this basis.

Furthermore, the Third Circuit having found in *Thomas* that the "restrain from acting" definition of reasonable doubt was constitutional when presented alone, it cannot follow that presenting a similar "refrain from acting" definition alongside the clearly constitutional "hesitate" definition would render the jury instruction given unconstitutional. Here, the trial court's instruction utilized the "refrain from acting" language with the Supreme Court approved "hesitate" language. Even if, as Petitioner argues, the instruction suggests to the jury that it may select the "refrain from acting" definition rather than the "hesitate" definition, it would still be selecting a constitutional definition of reasonable doubt. Moreover, as a whole, the instruction correctly communicated Petitioner's presumed innocence, the Commonwealth's burden of proof on all elements, and the nature of a reasonable doubt, and directed the jurors to reach their decision based upon all of the evidence. In light of the totality of the jury instruction given, this Court finds that it is likely that the jury understood the charge.

In addition, applying the *Strickland* standard for attorney performance, Petitioner cannot show that trial counsel's performance was deficient for failing to object to the jury instruction.

With respect to the question of trial counsel's alleged deficient performance at the time of trial in 2006, this Court must be mindful of the state of the law at the time trial counsel's alleged objection should have been made. In the context of reviewing the proposed jury instruction with the trial judge and opposing counsel, trial counsel likely would have recognized both the "hesitate" and similar "restrain" language as formulations that had been upheld repeatedly by the Pennsylvania Supreme Court in defining reasonable doubt. *See, e.g., Commonwealth v. Hawkins,* 787 A.2d 292, 301–02 (Pa. 2001); *Commonwealth v. Ragan,* 743 A.2d 390 (Pa. 1999); *Commonwealth v. Donough,* 103 A.2d 694, 697 (Pa. 1954); *Commonwealth v. Kluska,* 3 A.2d 398, 403 (Pa. 1939). In addition, as noted above, federal district courts addressing Pennsylvania jury instructions consistently have upheld versions of the similar "restrain" formulation. "In the face of such authority, a reasonable practitioner could certainly be excused for failing to object to the instruction as worded in [Petitioner's] case." *Brown*, 179 F. App'x at 850 (affirming denial of prisoner's ineffective assistance of counsel claim premised on trial counsel's failure to object to reasonable doubt instruction that equated hesitation with restraint).

Even if trial counsel could be said to have performed deficiently in not offering an objection to the "reasonable doubt" definition given by the trial court, this Court cannot say that, but for this alleged error, there was a "reasonable probability" that Petitioner would not have been convicted of third-degree murder, attempted murder, aggravated assault, and possessing an instrument of crime. The trial court's recitation of the Commonwealth's burden to prove guilt beyond a reasonable doubt was extensive, as described above. The particular description of reasonable doubt requiring the jury to consider "refraining" from taking a particular action rather than "hesitating" from taking it, was unlikely to matter much in the face of a complete and comprehensive instruction on the Commonwealth's burden of proof. As such, this Court finds

there is no reasonable likelihood of a result other than the underlying conviction had trial counsel objected to the language used by the trial court as to the Commonwealth's burden to prove Petitioner's guilt beyond a reasonable doubt.

***Objection Nine (pp. 51-55) – Magistate Judge's Failure to Hold an Evidentiary Hearing***

In his final objection, Petitioner argues that the Magistrate Judge erroneously concluded that Petitioner's counsel was not ineffective, without holding an evidentiary hearing. Petitioner contends that a hearing is necessary to determine whether counsel's alleged failures were the result of reasonable, strategic legal decisions. This Court disagrees.

It is well-settled that a district court is not required to hold an evidentiary hearing on a prisoner's *habeas* claims, including claims for ineffective assistance of counsel. *Palmer v. Hendricks*, 592 F.3d 386, 392-93 (3d Cir. 2010). The decision to hold such an evidentiary hearing is discretionary with the district judge. *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). Moreover, a federal *habeas* court is barred from holding an evidentiary hearing unless the petitioner was either diligent in his attempt to develop a factual basis for his claim in the state court proceedings or he satisfies the criteria set forth in AEDPA. 28 U.S.C. §2554(e)(2); *Palmer*, 592 F.3d 386, 392 (3d Cir. 2010). In determining whether to hold an evidentiary hearing, a federal *habeas* court should "consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 474. With respect to evidentiary hearings on ineffective assistance of counsel claims, the Third Circuit stated:

> We note that evidentiary hearings regarding counsel's strategy will not be required in all cases, as the objective reasonableness inquiry

> may obviate the need for such a hearing. Similar to instances in which a court disposes of an ineffective assistance claim by analyzing the prejudice prong without considering whether counsel's performance was deficient, it is appropriate for a court to dispose of a case in which conduct is objectively reasonable without considering counsel's strategy. *See Strickland,* 466 U.S. at 697, 104 S. Ct. 2052 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). Put differently, no hearings as to counsel's strategy are necessary in cases in which the conduct challenged is objectively reasonable, as courts can simply reject the claims on reasonableness grounds. *Cf. McCoy,* 410 F.3d at 134 (discussing whether a hearing is necessary in the context of the federal custody habeas section, 28 U.S.C. §2255).

*Thomas v. Varner*, 428 F.3d 491, 501 n.10 (3d Cir. 2005).

Here, as set forth above and in the R&R, in rejecting each of Petitioner's ineffective assistance of counsel claims, the Magistrate Judge correctly determined that Petitioner had failed to meet the *Martinez* standard by showing a "substantial" claim and/or failed to meet both prongs of the applicable *Strickland*. Under *Strickland*, a petitioner must show that counsel's performance was ***objectively*** deficient and that this deficient performance prejudiced the defense. 466 U.S. at 687. In addition, "judicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. To succeed, "a defendant must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). This Court finds that no error was committed by the Magistrate Judge in finding that trial

counsel's challenged decisions were ***objectively*** apparent and reasonable on the existing record. As such, no evidentiary hearing was necessary.

### *Certificate of Appealability*

Procedurally, at the time of a final order denying a petition under 28 U.S.C. §2254, the court must determine whether to issue a certificate of appealability. A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To satisfy this burden, the petitioner must show "that a reasonable jurist would find the district court's assessment of the constitutional claims to be debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). Notwithstanding this Court's above-analysis and conclusions, this Court finds that reasonable jurists might disagree with this Court's conclusion with respect to Petitioner's ineffective assistance of counsel claim premised on trial counsel's failure to object to the trial court's jury instruction on reasonable doubt (Claim IV). Therefore, a certificate of appealability will be issued on this claim *only*. Because reasonable jurists would not debate this Court's disposition of Petitioner's other claims, a certificate of appealability is denied as to the other claims.

## CONCLUSION

For the reasons stated herein, Petitioner's objections to the Report and Recommendation are overruled. Consequently, the Report and Recommendation submitted is approved and adopted, and Petitioner's *pro se* petition for a writ of *habeas corpus* is denied. However, as discussed above, this Court finds that reasonable jurists could disagree as to this Court's resolution of Petitioner's claim for ineffective assistance of counsel premised on trial counsel's failure to object to the trial court's jury instruction on reasonable doubt (Claim IV). Therefore, this Court will issue a certificate of appealability on this claim. Because reasonable jurists would

not debate this Court's disposition of Petitioner's other claims, a certificate of appealability is denied as to these other claims. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.